**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

August 19, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Margaret R. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-2814-DRM

Dear Counsel:

On August 27, 2025, Plaintiff Margaret R. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 11, 14 and 15). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I. <u>PROCEDURAL BACKGROUND</u>

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on April 13, 2021, alleging a disability onset of February 25, 2021. Tr. 20, 212-221. Plaintiff's claims were denied initially and on reconsideration. Tr. 20. On July 9, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 17-38. Following the hearing, on August 15, 2024, the ALJ issued a partially favorable decision, determining that Plaintiff was disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 et seq., for part, but not all, of the relevant time frame. Tr. 32. On July 17, 2025, the Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. <u>THE ALJ'S DECISION</u>

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since the date of application, April 13, 2021." Tr. 23. At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative disc disease, lumbar facet joint pain, cervicalgia, diabetes mellitus, neuropathy, obesity, and bipolar disorder." Tr. 23. The ALJ also determined that Plaintiff suffered from the non-severe impairment of "gastroesophageal reflux disease." Tr. 23. At step three, the ALJ determined that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 23. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) except can occasionally climb ramps or stairs and can occasionally stoop, kneel, crouch or crawl, and cannot climb ladders, ropes or scaffolds. She can understand and remember simple instructions and carry out simple tasks, and maintain pace for simple non-production rate tasks - meaning no assembly line work or work requiring meeting strict quotas. She can tolerate occasional interaction with supervisors, public, and coworkers, and can tolerate occasional changes to the routine work.

Tr. 25. At steps four and five, the ALJ determined that Plaintiff had no past relevant work but that prior to May 23, 2024, the date on which Plaintiff's age category changed to an individual of advanced age, Plaintiff could perform jobs that existed in significant numbers in the national economy, such as housekeeper, price marker, and collator operator. Tr. 29-31. The ALJ also determined that beginning on May 23, 2024, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 31. Therefore, the ALJ concluded that Plaintiff was not disabled prior to May 23, 2024, but has been disabled beginning on May 23, 2024. Tr. 32.

## III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an

administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff makes one argument, that the ALJ used an "undefined restriction" in the hypothetical to the vocational expert ("VE"), on which the VE later improperly relied, and then adopted an RFC which contained the same restriction. ECF No. 11 at 7-8. Specifically, in the hypothetical to the VE, the ALJ asked the VE to consider an individual who "[c]an maintain pace for simple non-production rate tasks. Meaning no assembly line work or work requiring meeting strict quotas." Tr. 53. The RFC contains the same restriction: "She can . . . maintain pace for simple non-production rate tasks - meaning no assembly line work or work requiring meeting strict quotas." Tr. 25. Plaintiff argues that the ALJ failed to define the restriction, which is also not defined by regulation. ECF No. 11 at 8-9. Plaintiff further argues that "assembly line work" and "work requiring meeting strict quotas" are merely examples of what the limitation excludes and do not clarify the limitation, thereby making it impossible to determine whether and which work Plaintiff could perform in the national economy. ECF No. 11 at 8-12. As such, Plaintiff argues both that that the RFC determination is insufficiently explained to be reviewable, and that the step-five finding that Plaintiff can perform work in the national economy is not supported by substantial evidence. ECF No. 11 at 12.

In response, the Commissioner contends that "the ALJ's use of production pace limits was properly contextualized by the examples of assembly line work and work that required meeting strict production quotas, and was otherwise within [an RFC] that limited [Plaintiff] to simple tasks in a low-stress environment with limited social contact." ECF No. 14 at 6-10. The Commissioner argues that the restrictions in the RFC accounted for Plaintiff's mental limitations, and that the Court has previously upheld RFC's with similar restrictions. ECF No. 14 at 7-9. In reply, Plaintiff argues that neither examples nor other restrictions in the RFC define the term at issue, nor do descriptors in Defendant's brief that the ALJ "never adopted." ECF No. 15 at 1-5.

The issue Plaintiff raises has its genesis in *Thomas v. Berryhill*, where the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine "whether their inclusion in [the] RFC is supported by substantial evidence." *Id*. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at 313, n.5.

Although the court in *Thomas* identified additional grounds for remand, later decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. *See Perry v. Berryhill,* 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how [she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude

that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions'") (quoting *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015)). *See also, e.g., Adrian H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3268, 2022 WL 112033, at *1 (D. Md. Jan. 12, 2022) (remanding where an "ALJ presented the VE with a hypothetical including 'no fast pace or strict production requirements,' with no further definition of those terms"); *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021) (remanding where RFC limited plaintiff to work "requiring no fast paced production," which the court analogized to the terms in *Thomas* and *Perry* "both in form and defect"); *Jennifer Anne S. v. Saul*, No. TMD 20-519, 2021 WL 2139432, at *5 (D. Md. May 26, 2021) (remanding where RFC limited plaintiff to work "which would not require a fast pace or production quotas such as would customarily be found working on an assembly line" and collecting cases remanding based on similar undefined RFC terms); *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("First, while the phrase 'production rate pace' is used in an appendix to the DOT, a definition is not provided. Second, the term 'production pace or strict production quotas' is directly analogous to the term deemed problematic in *Thomas*, and the Court cannot ascertain how the inclusion of the word 'strict' would cure the problem identified by the Fourth Circuit.")[1]; *Nora P. v. Comm'r Soc. Sec.*, No. SAG-18-1604, 2019 U.S. Dist. LEXIS 68383, at *4-5 (D. Md. Apr. 23, 2019) (remand warranted where RFC failed to define phrase "no fast pace or strict production requirements.").

Here, however, the ALJ has *not* left the term "non-production rate tasks" undefined. Rather, in both in the RFC and VE hypothetical she explains what she means by the term: "simple non-production rate tasks - *meaning* no assembly line work or work requiring meeting strict quotas." Tr. 25 (emphasis added); *see* Tr. 53 (same except punctuation). Both concepts—assembly lines, and strict (i.e. rigidly enforced) quotas—are easily understood in common parlance. *See Kenneth L. v. Kijakazi,* No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) ("'no strict production quotas' contains terms that are subject to common understanding. Unlike the term in *Thomas*, which required the Court to determine what pace or rate was required in 'demand' or

---

[1] The term "production rate pace" appears in Appendix C to the Department of Labor's *Dictionary of Occupational Titles* ("DOT"), in a section enumerating three situations in which occupations that would otherwise be classified as "sedentary work" (because the amount of weight lifted is negligible) instead qualify as "light work." The third such situation is: "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C — Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The discussion goes on to explain: "NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." *Id.* Nearly-identical language appears in the DOT's companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"), Appendix C – Physical Demands: "working at a production rate pace while constantly pushing or pulling materials even though the weight of the materials is negligible." However, no definition is given of "production rate pace" in either volume, and the term's use in this narrow context does not elucidate a general meaning.

'production' occupations . . .[t]he term in this case plainly relates to the rigidity of the occupations' production requirements—whatever those requirements may be"); *accord Shuronn S. v. Kijakazi*, No. TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022).

This case is distinguishable from a line of cases in which this court has remanded ALJ decisions involving RFCs or VE hypotheticals with the terms "production rate," "production pace," or similar, coupled with *examples* such as assembly line work or work with time- or piece-based quotas.[2] Such cases have frequently relied on *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025) as persuasive in elucidating the holding of *Thomas* for situations where ALJs provide examples such as assembly line work or time- or piece-based quotas. In *Linger*, the Fourth Circuit held that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description of a limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry*, 765 F. App'x at 872).

But here, the ALJ did not use "such as," "as in," "e.g.," or "such as would customarily be found on" to identify assembly line work or work involving quotas as mere *examples* of "non-production rate tasks" while leaving the broader scope of that term undefined. Rather, even though the term may have no generally applicable definition, the ALJ made clear exactly what she meant

---

[2] *See, e.g., Joeann S. v. Bisignano,* No. AAQ-25-01954, 2026 WL 2110570, at *1 (D. Md. July 22, 2026) ("fast-paced production requirements such as fast paced assembly line work or high-volume piecemeal quotas"); *Patrice V. v. Bisignano*, No. DRM-25-3126, 2026 WL 2035205, at *4 (D. Md. July 14, 2026) ("a specific production rate pace, such as assembly line work or an hourly production quota"); *Jasmine M. v. Bisignano*, No. JMC-25-CV-3291, 2026 WL 2035198, at *2 (D. Md. July 14, 2026) ("work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas"); *Alkein C. v. Bisignano,* No. TJS-25-1310, 2026 WL 1266164, at *1 (D. Md. May 8, 2026) ("production rate for pace of work (e.g., assembly-line work)"); *Al-Nissa J. v. Bisignano*, No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026) ("specific production rate pace, such as assembly line work or an hourly production quota"); *Mark M. v. Bisignano*, No. EA-24-3738, 2026 WL 739424, at *7 (D. Md. Mar. 16, 2026) ("work requiring a specific production rate, such as assembly line work or work that requires hourly quotas"); *Jason M. v. Bisignano*, No. DRM-25-0358, 2026 WL 523879, at *2-*4 (D. Md. Feb. 25, 2026) ("specific rate production, such as assembly line work or work that requires hourly quotas.") *See also Kacy W. v. Bisignano,* No. TJS-25-1465, 2026 WL 2035417, at *2 (D. Md. July 14, 2026) ("a fast pace or production quotas such as would customarily be found on an assembly line"). *But see Autumn C. v. Bisignano,* No. EA-25-1592, 2026 WL 2042105, at *3 (D. Md. July 15, 2026) (distinguishing *Linger* and holding that "the phrasing employed here—that Plaintiff could 'perform work where she is limited to simple, routine, and repetitive tasks in an environment where she is not expected to perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas'—contains commonly understood terms and examples that collectively provide sufficient explanation for appellate review.")

by it ("*meaning* no assembly line work or work requiring meeting strict quotas") in her hypothetical to the VE and in Plaintiff's RFC. Accordingly, the Court finds that the ALJ's RFC finding is sufficiently articulated to be reviewable. Moreover, because the ALJ provided this definition in her hypothetical, the VE could determine with adequate certainty whether an individual with that restriction was capable of performing the jobs of housekeeper, price marker, and collator operator. As such, the Court finds that the ALJ's step-five finding was supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFRIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge